# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

MARY DECKER,                                   :

                          Plaintiff,                            Case No. 3:10-cv-372

                                                                District Judge Thomas M. Rose
                                                                Magistrate Judge Michael R. Merz

          -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                                   Defendant.          :

## REPORT AND RECOMMENDATIONS

   Plaintiff brought this action pursuant to 42 U.S.C. §405(g), as incorporated into 42 U.S.C. §1383(c)(3), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

   Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act.  42 U.S.C. §1381a.  With respect to the present case, eligibility is dependent upon disability, income, and other financial resources.  42 U.S.C. §1382(a).  To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §1382c(a)(A).  A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers.  42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits

2

prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI on March 24, 1989, which the Commissioner granted on the basis that Plaintiff satisfied Listing 12.05C due to her mental retardation and borderline personality disorder. See Tr. 157. The Commissioner terminated Plaintiff's benefits in 2003 when Plaintiff was incarcerated. See Tr. 14. Plaintiff was incarcerated for two years. *Id.*

Plaintiff filed a second application for SSI on June 28, 2005, alleging disability from March 1, 1989, due to ADHD and bipolar disorder. (Tr. 51-53; 118). The Commissioner denied Plaintiff's application initially and on reconsideration. (Tr. 35-37; 39-41). Administrative Law

Judge Melvin Padilla held a hearing, (Tr. 596-633), following which he determined that Plaintiff is not disabled. (Tr. 11-28). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe polysubstance abuse and likely secondary depression or mood disorder and possible borderline intelligence, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 19, ¶ 2, 22, ¶ 3). Judge Padilla also found that Plaintiff has an alcohol and drug addiction that is a contributing factor material to a finding of disability. (Tr. 24, ¶ 4). Judge Padilla found that, independent of Plaintiff's polysubstance addiction, she has the residual functional capacity to perform a limited range of work at all exertional levels. *Id.* Judge Padilla then used section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 26, ¶ 9). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 27).

The issue in this case is whether the Commissioner properly determined that Plaintiff does not satisfy Listing 12.05C, specifically the "mental retardation" requirement of that Listing. There is no dispute that Plaintiff satisfies the "physical or other mental impairment imposing additional and significant work-related limitation of function" requirement of the Listing.

The record contains a copy of Plaintiff's school file dated 1981-1983. (Tr. 79-90). That file indicates that at age sixteen Plaintiff's IQ was measured at 57. *Id.*

Examining psychologist Dr. Gross reported in June 1989 that Plaintiff completed the tenth grade and was in special education, that she gave a confusing chronology of events, was alert

and oriented, and that her verbal IQ was 63, her performance IQ was 77, and her full scale IQ was 69. (Tr. 142-46). Dr. Gross opined that Plaintiff's diagnoses were mild mental retardation and borderline personality disorder. *Id.*

The record contains a copy of Plaintiff's medical records from the State of Ohio Department of Rehabilitation and Corrections dated May 28, 2003, to May 30, 2005. (Tr. 159-276). Those records reveal that over time, Plaintiff's medical care providers identified Plaintiff's mental health diagnoses as bipolar disorder, ADHD, borderline personality disorder, polysubstance abuse, and learning disability. *Id.* Those records reveal that Plaintiff reported a history of drug and alcohol abuse dating back to age eight. *Id.*

The record contains Plaintiff's treatment records from Eastway Behavioral Healthcare dated June 2005 through June 2008. (Tr. 312-12, 329-536; 550-87). Those records reveal that over time, Plaintiff received treatment at that facility for bipolar disorder, polysubstance dependence, post-traumatic stress disorder, borderline personality disorder, and learning disorder. *Id.*

Examining psychologist Dr. Flexman reported on September 1, 2005, that Plaintiff had a tenth grade education in slow learning classrooms, had no psychiatric hospitalizations, was not currently receiving mental health treatment although she had a caseworker, she quit using alcohol seventeen months ago, and that in the past she has used marijuana, cocaine, uppers, and hallucinogens. (Tr. 277-83). Dr. Flexman also reported that Plaintiff was oriented, her attention was poor, her memory was good, and that her verbal IQ was 61, her performance IQ was 79, and her full scale IQ was 66. *Id.* Dr. Flexman identified Plaintiff's diagnoses as alcohol abuse in current remission, substance abuse in current remission, mild mental retardation, and borderline personality traits. *Id.*

Examining psychologist Dr. Bonds reported on May 13, 2008, that Plaintiff completed the tenth grade, was in special education classes, was currently receiving mental health treatment at Eastway, began drinking at the age of twelve, has five to six drinks on a typical day, began using illicit drugs at the age of eighteen, and that she uses marijuana when she can get it and crack as often as she can afford it or get it. (Tr. 537-49 ). Dr. Bonds also reported that Plaintiff's speech was normal, acknowledged that controlling her temper was a problem for her, did not display overt signs of anxiety, had a normal mental content, and that she was alert and oriented. *Id.* Dr. Bonds noted that Plaintiff's verbal IQ was 58, her performance IQ was 70, and her full scale IQ was 60, that her scores were significantly lower than previous scores, she scored in the very low range on memory testing, and that she seemed to work very quickly and carelessly during testing and her scores may be underestimating her abilities due to her lack of effort and careless answering. *Id.* Dr. Bonds identified Plaintiff's diagnoses as alcohol abuse, cocaine dependence, and mild mental retardation. *Id.*

The medical advisor (MA) testified at the hearing that the record contained conflicting evidence as to mental retardation, that none of Plaintiff's mental health care providers indicated a diagnosis of mental retardation, that she was functioning much higher than she had tested, and that she was completely independent in self-care and home living. (Tr. 617-29). The MA also testified that the test results Dr. Bonds reported were lower than the scores Dr. Flexman reported but that Dr. Bonds opined the scores were an underestimate of Plaintiff's functioning due to carelessness. *Id.* The MA testified further that in her opinion, Plaintiff was functioning more on the borderline level. *Id.*

First, the Court addresses the issue of *res judicata*. *Drummond v. Commissioner of*

6

*Social Security,* 126 F.3d 837, 842 (6th Cir. 1997), and Acquiescence Ruling (AR) 98-4(6), 1998 WL 283902 (June 1, 1998), essentially provide that absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the residual functional capacity finding of a previous ALJ.

      Judge Padilla acknowledged that Plaintiff's position is that he (Judge Padilla) was bound by the previous determination that Plaintiff satisfied the mental retardation requirement of Listing 12.05C. (Tr. 22). However, Judge Padilla determined that there had been a considerable amount of new evidence submitted in connection with Plaintiff's current application which put into question the validity of Plaintiff's IQ results, both in connection with her prior application and in connection with her current application. *Id.* Judge Padilla concluded that as a result *res judicata* did not apply. *Id.*

      This Court agrees. As Plaintiff acknowledges, the Commissioner granted Plaintiff's prior application based on Dr. Gross' evaluation and opinion and on reviewing psychologist Dr. Semmelman's opinion that Plaintiff met Listing 12.05C. See Doc. 8 at 4-5; Tr. 142-46; 147-56. However, the record contains several additional reports and opinions in connection with Plaintiff's present application which, as Judge Padilla noted, put the validity of Plaintiff's reported IQ scores into question. The Court, then, turns to the requirements of Listing 12.05C and the validity of Plaintiff's IQ scores.

      A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the

requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing).  It is not sufficient to come close to meeting the requirements of a Listing.  *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

> Listing 12.05 reads in part:
>
> *Mental Retardation and Autism:*  Mental retardation refers to a significantly sub average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)....
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> ...
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
> ...

20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05.

The regulations provide that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* one of the four sets of criteria...."  *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001) (citations omitted)(emphasis in original).

As noted above, Dr. Flexman diagnosed Plaintiff with mild mental retardation and noted that her test scores were within the range of mild mental retardation.  However, in contrast, Dr. Flexman noted that Plaintiff prepares her own food, does dishes, laundry, cleaning, dusting, outside chores, shops, goes to the parks and garage sales, uses a computer, goes camping, plays video games, rides bikes, does puzzles, eats out, attends church, rides a bike, watches television and

VCR movies, visits other, and reads books, magazines, and the newspaper. (Tr. 279).

Although Dr. Bonds reported that Plaintiff's ID scores were significantly lower than previous scores and he identified one of Plaintiff's diagnoses as mild mental retardation, Dr. Bonds questioned the validity of the scores. Specifically, Dr. Bonds noted that Plaintiff worked very quickly and carelessly during testing and therefore the scores might be underestimating her abilities due to her lack of effort and careless answering. (Tr. 542). Dr. Bonds also noted that Plaintiff cares for her cat, watches television, shops, cooks, and does laundry. (Tr. 541).

As noted above, the record contains Plaintiff's medical records from the State of Ohio Department of Rehabilitation and Corrections dated May 2003 through May 2005. Although those records reveal that Plaintiff had several mental health diagnoses, at no time did Plaintiff's health care providers at that facility question Plaintiff's intellectual functioning or determine that her diagnoses included mental retardation. Indeed, Plaintiff's health care providers identified learning disability, and not mental retardation, as one of Plaintiff's diagnoses.

Similarly, the record contains a copy of Plaintiff's mental health treatment notes from Eastway dated June 2005 through June 2008. Again, none of Plaintiff's health care providers at Eastway diagnosed Plaintiff with mental retardation and, in fact, identified learning disability, and not mental retardation, as one of Plaintiff's diagnoses.

The MA reviewed the record and relied in great part on the above-referenced evidence in reaching her conclusion that, essentially, Plaintiff did not satisfy the Listing. Specifically, the MA determined that Plaintiff was functioning much higher than she had tested, that she was completely independent in self-care and home living, that her test scores were an underestimate of her functioning due to carelessness, and that she was functioning more on the

borderline level than the mental retardation level.

Finally, in 2005 and 2006, the reviewing psychologists reported that Plaintiff did not satisfy the Listings. (Tr. 285-99). Those psychologists noted that Plaintiff did not exhibit deficits in adaptive functioning that are necessary for a diagnosis of mild mental retardation. *Id.* The reviewers noted that Plaintiff cared for her personal hygiene, prepared meals, mowed, cleaned, shopped, read, played cards, watched television, and did word search puzzles. *Id.*

Under these facts, Judge Padilla had an adequate basis for concluding that he was not bound by *res judicata* with respect to the previous agency finding that Plaintiff is mentally retarded. In addition, the Commissioner had an adequate basis for relying on the MA's testimony that Plaintiff is not mentally retarded. Her opinion is supported by the other evidence of record including Plaintiff's self-reported activities, the treatment records from the Ohio Department of Rehabilitation and Corrections and Eastway, Dr. Bonds' opinion, and the opinions of the reviewing psychologists.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

June 21, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

J:\Social Security - Drafts\Decker_SSI.wpd

## NOTICE  REGARDING  OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

11